UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

---

|                                    |   |                           |
|------------------------------------|---|---------------------------|
| CODY JONES,                        | : | CASE NO. 1:18-cv-929      |
|                                    | : |                           |
|    Plaintiff,       | : |                           |
|                                    | : | OPINION & ORDER           |
| vs.                                | : | [Resolving Docs. 33, 44]  |
|                                    | : |                           |
| CITY OF ELYRIA, OHIO, *et al.*,    | : |                           |
|                                    | : |                           |
|    Defendants.      | : |                           |

---

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Cody Jones sues City of Elyria Police Officers Anthony Weber, Nicholas Chalkley, and Paige Mitchell (collectively, "Officer Defendants"); Elyria Police Department Chief Duane Whitely; and the City of Elyria, Ohio. On September 24, 2018, Defendants moved for summary judgment.[1] For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.

## I. Background

Plaintiff Jones makes claims related to an April 23, 2016 encounter he had with Officer Defendants. He says an illegal stop and arrest led to an involuntary hospital commitment and criminal prosecution that flowed from the April 23, 2016 events. A grand jury indicted Jones for the crimes of resisting arrest, obstructing official business, and assaulting a peace officer. The grand jury based its indictment on testimony derived from

---

[1] Doc. 33. Plaintiff Jones opposes. Docs. 39, 40. Defendants reply. Doc. 41. In conjunction with the summary judgment motion, Defendants also filed full trial transcripts from Jones' 2017 criminal trial, as well as the depositions of Jones, Weber, and Mitchell for this action. Docs. 34, 35, 36, 37, 38.

Officer Defendants' police report narratives.[2] After a witness bystander testified at trial,[3] a jury found Jones not guilty.[4]

## II. Legal Standard

"Summary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[5] The moving party first must show that there is no genuine dispute as to a material fact entitling it to judgment.[6] If the moving party makes this showing, the nonmoving party then must set forth specific facts in the record—not its allegations or denials in pleadings—showing a triable issue.[7] The Court views the facts and all factual inferences in the light most favorable to the nonmoving party.[8]

## III. Preliminary Evidentiary Matters

Defendants move to strike Plaintiff Jones' expert report supplemental exhibit that Jones belatedly filed in support of his opposition.[9] Defendants concede that Jones timely disclosed the expert report for trial. The Court **GRANTS** Defendants' motion to strike the expert report as a supplemental exhibit, but without prejudice as to its use at trial.

Defendants also move to strike witness Dominique Camel's declaration as an exhibit supporting Jones' opposition on the ground that Jones failed to timely identify

---

[2] Doc. 39-6; Doc. 33-5.
[3] Doc. 35 at 339–361. *See also* Doc. 35 at 82–93.
[4] Doc. 39-9.
[5] *Killion v. KeHE Distributors, LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).
[6] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[7] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[8] *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002).
[9] Doc. 44.

Camel in his initial disclosures.[10] At the status conference, however, Jones' counsel told the Court that their private investigator had just located Camel and that they promptly disclosed Camel's identity to Defendants thereafter. The Court finds this to be good cause for the delay, and **DENIES** Defendants' motion to strike Camel's declaration.

## IV. Discussion

### A. Federal Law Qualified Immunity

Once a defendant raises a qualified immunity defense to a 42 U.S.C. § 1983 claim, the plaintiff bears the burden of proving that the defendant is not entitled to the defense.[11] In considering a qualified immunity defense, the Court asks: (1) viewing the evidence in the light most favorable to the plaintiff, whether the officer violated a constitutional right; and (2) whether that right was clearly established, such that a reasonable officer would know that his conduct was unlawful in that situation.[12]

### B. State Law Statutory Immunity

Ohio law generally immunizes political subdivisions from civil liability for injuries allegedly caused by an act of the subdivision or its employees in connection with a governmental function.[13] This immunity extends to government officials sued in their official capacities.[14] Jones' state law claims against Elyria and official-capacity Defendants concern their arrest and prosecution of Jones. These are acts made in connection with a

---

[10] Doc. 41 at 2.
[11] *Smoak v. Hall*, 460 F.3d 768, 778 (6th Cir. 2006).
[12] *Id.* at 777–78.
[13] Ohio Rev. Code § 2744.02(A)(1).
[14] *See Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989) (explaining that claims against official-capacity defendants are treated as claims against the government entity).

Case No. 1:18-cv-929
Gwin, J.

government function,[15] and they do not fall under an exception.[16] The Court **GRANTS** summary judgment for Elyria and official-capacity Defendants on all state law claims.

Ohio law also immunizes political subdivision employees from civil liability when they are sued in their personal capacities for the same claims, unless an employee acts "with malicious purpose, in bad faith, or in a wanton or reckless manner."[17] The Court considers individual-capacity Defendants' state immunity defense below.

### C. Claims Against City of Elyria and Chief Whitely

Separate from the *Monell* claims, Plaintiff Jones brings Fourth Amendment false arrest and malicious prosecution § 1983 claims against Elyria. Because a municipality cannot be liable under § 1983 simply because one of its employees violated a plaintiff's constitutional rights,[18] the Court **GRANTS** summary judgment for Elyria on these claims.

Separate from the supervisory liability § 1983 claim, Jones brings federal and state false arrest, federal and state malicious prosecution, and intentional infliction of emotional distress claims against Chief Whitely. Because the undisputed facts show that Chief Whitely is not personally liable for these claims, the Court **GRANTS** summary judgment for Whitely.

### D. Fourth Amendment False Arrest

A federal false arrest claim requires (1) an arrest (2) that lacks probable cause.[19]

The Fourth Amendment protects persons from unreasonable governmental searches

---

[15] Ohio Rev. Code § 2744.01(C)(2)(b), (i) (power to preserve peace and suppress disturbances, and law enforcement).
[16] Ohio Rev. Code § 2744.02(B).
[17] Ohio Rev. Code § 2744.03(A)(6)(b).
[18] *See Smith v. City of Troy, Ohio*, 874 F.3d 938, 946 (6th Cir. 2017).
[19] *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (citation omitted).

Case No. 1:18-cv-929
Gwin, J.

and seizures.[20] These protections extend to *Terry* stops—brief investigatory stops that fall short of traditional arrest.[21]

To make a *Terry* stop, a police officer must show objective grounds for reasonable suspicion to believe that the person stopped is, or is about to be, engaged in criminal activity.[22] Reasonable suspicion exists when an officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion."[23] Inarticulable hunches or generalized suspicions are insufficient.[24]

"[I]t has long been clearly established that an officer needs evidence of criminality or dangerousness before he may detain and [frisk] a law-abiding citizen."[25] "Lingering on the side of a road does not constitute such evidence—even late at night, in a high-crime area, without a nearby car, and 'without evident purpose.'"[26]

Under *Terry*, a police officer who makes a valid investigatory stop may conduct a limited pat-down of a suspect's outer clothing. But the pat-down may be conducted only if the officer has a reasonable belief that the detainee poses a threat to the officer's safety or the safety of others. The pat-down must be limited to a search for weapons. To justify a pat-down during such a Terry stop, the officer must reasonably suspect that the person stopped is armed and dangerous.[27]

---

[20] U.S. Const. amend. IV.
[21] *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citation omitted).
[22] *United States v. Cortez*, 449 U.S. 411, 417 (1981).
[23] *Terry v. Ohio*, 392 U.S. 1, 21 (1968).
[24] *Id.* at 27 (reasonable suspicion cannot be based on officer's "inchoate and unparticularized suspicion or 'hunch'"). *See also United States v. Beauchamp*, 659 F.3d 560, 570–71 (6th Cir. 2011) (Terry stop of drug defendant was not supported by reasonable suspicion though defendant was observed at 2:30 am in a high-drug complaint housing project and even though the defendant hurriedly walked away from a police officer while avoiding eye contact).
[25] *Wilkerson v. City of Akron, Ohio*, No. 17-4108, 2018 WL 4959674, at *3 (6th Cir. Oct. 15, 2018) (alterations in original) (quoting *Northrup v. City of Toledo Police Dep't*, 785 F.3d 1128, 1133 (6th Cir. 2015)).
[26] *Id.* (quoting *Family Serv. Ass'n ex rel. Coil v. Wells Twp.*, 783 F.3d 600, 604–05 (6th Cir. 2015)).
[27] *Arizona v. Johnson*, 555 U.S. 323, 327 (2009). *See also Northrup*, 785 F.3d at 1131–32 (frisk not justified

Case No. 1:18-cv-929
Gwin, J.

Probable cause for an arrest can develop during the course of a *Terry* stop.[28] "An officer has probable cause to make an arrest when the facts and circumstances within her knowledge and of which she had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the [individual] had committed or was committing an offense."[29]

Viewing the evidence in Jones' favor, Officer Defendants did not have reasonable suspicion to stop and frisk Jones. Officer Defendants based their stop solely on the called-in report that a white male was picking food out of a dumpster. Defendants only state (once, in the reply brief, without elaboration) that Officer Weber was conducting a "welfare check" when he detained Jones.[30] Defendants do not say that Officer Defendants suspected the garbage-picker of criminal activity. In any event, when they approached Jones, Jones was not even near the dumpsters. He was just a white male in the same populated shopping plaza speaking with two women.

Viewing the evidence in the light most favorable to Jones, Jones was peaceably speaking with witness Ruth Kennedy and her boss when Officer Defendants first noticed Jones and decided to approach him.[31] Kennedy testified that Jones was "very nice," and neither felt threatened by Jones nor believed him to be to be intoxicated or otherwise remarkable in any way.[32] Sufficient evidence supports Jones' claim that the Officer

---

because 911 report and officer observation that pedestrian was openly carrying handgun where state law permitted open carry of firearms, did not create legitimate concern for officer's safety).

[28] *See, e.g., United States v. Garza,* 10 F.3d 1241, 1246 (6th Cir. 1993).
[29] *Wesley v. Campbell,* 864 F.3d 433, 439 (6th Cir. 2017) (brackets and citation omitted).
[30] Doc. 41 at 8.
[31] Doc. 37 at 18:5–24:5; Doc. 35 at 340:19–345:9.
[32] Doc. 35 at 340:19–345:9.

-6-

Case No. 1:18-cv-929
Gwin, J.

Defendants did not have reasonable suspicion to allow them to stop Jones.

Without reasonable suspicion for the stop, the frisk cannot be lawful. Even if Officer Defendants reasonably suspected Jones of criminal wrongdoing, Defendants' argument that the pat-down was justified because Jones returned his hands to his pockets after being told not to rests on disputed facts.[33] Although he has given somewhat confused testimony, Jones has testified: "And he made sure to let me know, you know, 'Keep your hands away from your pockets. Hands out of your pockets.' And I obliged. And I, compliantly, put my hands on the car, as he had asked."[34]

Moreover, it is illogic that Jones actually returned his hands to his pockets after receiving a claimed direction not to put his hands in his pockets. No contraband or weapon was ever found in Jones' pocket. With no reason to return his hands to his pockets, it is not believable that Jones violated any direct command to keep his hands away from his pockets. And given the circumstances, it would not lead an officer to reasonably suspect that Jones was armed and dangerous.[35]

The Court finds that Officer Defendants arrested Jones during the pat-down when they tackled him to the ground, as they concede,[36] if not earlier when Officer Defendants initially put Jones on the vehicle for a pat-down.[37]

---

[33] While it appears that Jones admits to returning his hands to his pockets *during the pat-down*, *see* Doc. 36 at 46:21–24, it does not appear that he admits to doing so *before the pat-down*, *see* Doc. 36 at 36:12–37:13; Doc. 35 at 365:16–366:2.

[34] Doc. 35 at 365:24–366:2.

[35] Contrary to Defendants' assertions, *United States v. Bohannon,* 225 F.3d 615 (6th Cir. 2000), does not support their argument. In *Bohannon*, officers encountered the defendant when they were about to conduct a nighttime raid on a residence suspected of being an illegal drug operation's laboratory. *Id.* at 617–18. The defendant's familiarity with the residence's premises gave the officer reasonable suspicion that he was involved in criminal activity and also armed. *Id.* at 619–20. Then, after the defendant twice ignored the officer's request that he keep his hands out of his pockets and acted nervous during the stop, the officer concluded that he was both armed and dangerous, and conducted a pat-down. *Id.*

[36] Doc. 33-1 at 7, 10–11, 13–14.

[37] *See Sutton v. Metro. Gov't of Nashville & Davidson Cty.*, 700 F.3d 865, 873–74 (6th Cir. 2012) (explaining

Jones' lack-of-probable-cause evidence shows a genuine issue for trial. Two uninvolved witnesses testify that Jones was cooperating and had not resisted Officer Defendants before they took him to the ground.[38] Defendants' argument that Officer Defendants had probable cause to arrest Jones for the crime of obstructing official business therefore rests on disputed facts.

Unaffiliated bystander witnesses Dominique Camel and Ruth Kennedy undercut the Officer Defendants' background fact version. Camel and Kennedy state that Jones did not physically threaten, harm, or otherwise actively resist Officer Defendants.

Camel saw the incident while standing in the parking lot talking with a friend:

> I saw Mr. Jones walking across the parking lot. He was cooperating with the police officers. I saw the officers take Mr. Jones to the ground. At no time did Cody Jones physically resist the officers. I heard Cody Jones screaming for the officers to stop, but the officers fighting him.[39]

Witness Kennedy saw most of the incident, and testified twice at Jones' criminal prosecution. Kennedy's testimony is inconsistent with the Defendants' claim that Jones attempted to flee, resist, or act violently towards Officer Defendants, as Officer Defendants represented in their police reports:

> Q. Okay. What did you see?
> A. I saw [Officer Weber] pat [Cody Jones] down. And as he went to his back pocket, I saw Cody sort of flinch and kind of twist to—as if he was about to speak to the officer or something along those sorts.
> …
> Q. Okay. And so he's patting him down. Cody flinches to go talk to him. What happens next?
> A. Then he gets tackled to the ground.
> …

---

that a "detention becomes an arrest that must be supported by probable cause" when "[w]hen police actions go beyond checking out the suspicious circumstances that led to the original stop" (citation omitted)).

[38] *See* Doc. 39-7 at ¶ 4; Doc. 35 at 342:23–349:6.

[39] Doc. 39-7 at ¶ 4.

Case No. 1:18-cv-929
Gwin, J.

    Q. Did Cody Jones ever swing a punch at any of the officers?
    A. No.
    ...
    Q. Did you ever see Cody Jones attempt to grab one of the officers around the waist?
    A. No.
    Q. Did you ever see him attempt to take one of the officers' firearm?
    A. No, I did not.
    Q. And you were looking pretty much the entire time?
    A. Correct.[40]

Defendants' other arguments also do not succeed. The April 29, 2016 grand jury indictment of Jones did not establish probable cause for Jones' April 23, 2018 seizure because, among other reasons, that indictment post-dated the arrest. Per *Bradley v. Reno*,[41] the Ohio state court's decision denying Jones' suppression motion and finding that Officer Defendants had probable cause to arrest Jones is not entitled to issue preclusive effect. Jones thus provides sufficient evidence that Officer Defendants' arrested him without probable cause, violating his Fourth Amendment rights.

The constitutional right to freedom from arrest in the absence of probable cause is clearly established.[42] Viewing all factual inferences in Jones' favor, a reasonable officer would have known that arresting Jones without probable cause violated his Fourth Amendment rights. The ultimate legal question of Officer Defendants' entitlement to immunity will turn on which view of the facts the jury accepts. The Court **DENIES** Defendants' summary judgment motion on the false arrest §1983 claim against Officer Defendants.

---

[40] *See* Doc. 35 at 342:23–349:6.
[41] *Bradley v. Reno*, 749 F.3d 553, 556–59 (6th Cir. 2014).
[42] *Courtright v. City of Battle Creek*, 839 F.3d 513, 520 (6th Cir. 2016).

### E. State Law False Arrest

An Ohio law false arrest claim requires "(1) the intentional detention of the person and (2) the unlawfulness of the detention."[43] For the same reasons just described, Jones shows a factual dispute as to whether Officer Defendants had probable cause to believe Jones was engaged in criminal wrongdoing when they arrested him.

A reasonable juror also could conclude that Officer Defendants manifested, at the very least, a wanton or reckless abuse of official state power by seizing Jones without lawful authority,[44] especially because they eventually involuntarily committed him. Officer Defendants' entitlement to immunity therefore depends on the jury's findings on probable cause.

The Court **DENIES** Defendants' motion for summary judgment on the state false arrest claims against Officer Defendants.

### F. Fourth Amendment Excessive Force

Using "excessive force" when seizing a person violates the Fourth Amendment.[45] Three factors help determine the reasonableness of the use of force: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the police officers or others; and (3) whether the suspect actively resisted arrest or attempted to evade arrest by flight.[46]

Jones presents sufficient evidence showing that Officer Defendants' use of force was unreasonable. Officer Defendants tackled Jones, put his face to the pavement and

---

[43] *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 315 (6th Cir. 2005) (citation omitted).
[44] *See, e.g., Walsh v. Erie Cty. Dep't of Job & Family Servs.*, 240 F. Supp. 2d 731, 764–65 (N.D. Ohio 2003).
[45] *Graham v. Connor*, 490 U.S. 386, 394–95 (1989).
[46] *Id.* at 396.

Case No. 1:18-cv-929
Gwin, J.

physically pinned him to the ground, punched him in the face, and then repeatedly tased him—without any warning. Yet, as explained, if disinterested witnesses Kennedy and Camel are believed, Officer Defendants lacked probable cause to arrest Jones for *any* offense. Jones also was unarmed and did not pose a threat to Officer Defendants. Two witnesses say that Jones was cooperating, and did not fight or resist them. Ruth Kennedy specifically denies that Jones attempted to strike the officers, grab one of their firearms, or grab one of them around the waist.[47]

Defendants' argument that Officer Defendants could constitutionally tase and physically strike Jones because Jones actively resisted arrest and tried to flee fails because it rests on disputed facts.[48]

The Sixth Circuit has clearly established that use of force against non-resisting, surrendering, or neutralized arrestees is excessive as a matter of law.[49] Viewing all factual inferences in Jones' favor, a reasonable officer would have known that using force against the non-resisting Jones, without reasonably believing that Jones was engaged in criminal wrongdoing, violated Jones' constitutional rights. The legal question of immunity, however, will depend on the jury's findings on several material factual issues.[50]

The Court **DENIES** Defendants' summary judgment motion on this claim against Officer Defendants.

The non-participatory liability theory for excessive force does not apply to Officer

---

[47] Doc. 35 at 342:23–349:6.
[48] *See Rudlaff v. Gillispie*, 791 F.3d 638, 641–42 (6th Cir. 2015) (holding that it is not excessive force for the police to tase or knee-strike a suspect to subdue him when the suspect is actively resisting arrest).
[49] *See Bennett v. Krakowski*, 671 F.3d 553, 562–63 (6th Cir. 2011); *Kijowski v. City of Niles*, 372 F. App'x 595, 601 (6th Cir. 2010); *Ortiz ex rel. Ortiz v. Kazimer*, 811 F.3d 848, 851–53 (6th Cir. 2016); *Baker v. City of Hamilton, Ohio*, 471 F.3d 601, 606–09 (6th Cir. 2006).
[50] *See Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994).

Case No. 1:18-cv-929
Gwin, J.

Mitchell's involvement because she directly participated in using force against Jones.[51]

## G. Assault and Battery

Ohio's one-year statute of limitations bars Jones' assault and battery claims.[52] The incident occurred on April 23, 2016, and Jones did not file his first complaint until April 26, 2017.[53] The Court **GRANTS** summary judgment for Defendants on these claims.

## H. Fourth Amendment Malicious Prosecution

To prevail on a Fourth Amendment malicious prosecution claim, a plaintiff must prove: "(1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceedings, the plaintiff suffered a deprivation of liberty apart from the initial arrest; and (4) the criminal proceeding was resolved in the plaintiff's favor."[54]

Jones claims that Officer Defendants maliciously charged him with resisting arrest, obstructing official business, and assaulting a peace officer. He argues that the sole basis for the grand jury indictment are Officer Defendants' false police reports.

The deprivation-of-liberty and plaintiff-favorable-proceeding-outcome elements are

---

[51] *See, e.g.*, Doc. 39-5 at 7 (Officer Mitchell jumped in to assist Officer Weber, and pinned Jones' lower half to the ground). This liability theory is used to hold officials accountable when they are present to misconduct and do not act to prevent it—in other words, when an official would not otherwise be liable for excessive force because they did not *directly participate* in using it against the plaintiff. *See Turner v. Scott*, 119 F.3d 425, 429 (6th Cir.1997) ("[A] police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that the excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring."). *Cf. Bruner v. Dunaway*, 684 F.2d 422, 427 (6th Cir. 1982) (finding that a reasonable jury could find that the officers were personally involved in, and thus could be directly liable for, using excessive force against the plaintiff when the officers restrained the plaintiff's body while another officer dealt the injurious physical blows).

[52] Ohio Rev. Code § 2305.111(B).

[53] The original action was filed in state court, and Defendants removed the action to federal court. *See* Doc. 1 (Case No. 1:17-CV-01104). The Court granted Jones' motion for voluntary dismissal without prejudice on August 18, 2017, *see* Doc. 21, and Jones subsequently refiled the suit on April 23, 2018.

[54] *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015).

Case No. 1:18-cv-929
Gwin, J.

not factually disputed.[55] However, Defendants argue that Jones cannot show a lack of probable cause for the criminal prosecution because a grand jury indicted him of the charges.[56] However, a plaintiff can overcome the probable cause presumption created by a grand jury indictment by showing that:

> (1) a law-enforcement officer, in the course of setting a prosecution in motion, either knowingly or recklessly makes false statements (such as in affidavits or investigative reports) or falsifies or fabricates evidence; (2) the false statements and evidence, together with any concomitant misleading omissions, are material to the ultimate prosecution of the plaintiff; and (3) the false statements, evidence, and omissions do not consist solely of grand-jury testimony or preparation for that testimony….[57]

A plaintiff may use evidence of an officer's actions prior to and independent of grand-jury testimony to make this showing.[58]

If the April 23, 2016 events occurred as bystander witnesses Dominique Camel and Ruth Kennedy say, there was not probable cause for the charges. Camel and Kennedy state that Jones did not physically threaten, harm, or otherwise actively resist Officer Defendants.

The hospital mental center records show that Defendant Officers made indisputably false statements to hospital staff about Jones and the April 23, 2016 encounter. Officer Defendants' false statements to the medical staff could support a jury's determination that the police reports were falsified.

The committing doctor's evaluation noted that Elyria Police Department had "state[d] that [Jones] was found searching for food in dumpsters."[59] In the "statement of

---
[55] Jones was arrested and imprisoned. Doc. 39-5 at 5. A jury then found Jones not guilty of the charges. Doc. 39-9.
[56] *Bickerstaff v. Lucarelli*, 830 F.3d 388, 398 (6th Cir. 2016) (citation omitted).
[57] *King v. Harwood*, 852 F.3d 568, 587–88 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 640 (2018).
[58] *Id.* at 590.
[59] Doc. 39-10 at 1.

-13-

Case No. 1:18-cv-929
Gwin, J.

belief" used to justify Jones' involuntarily commitment, Officer Weber wrote, "Upon speaking to officers, Cody appeared disoriented and was hallucinating."[60] Officer Defendants now testify they neither observed Jones hallucinating nor heard him speak at all during the encounter.[61]

Viewing the evidence in the light most favorable to Jones, Officer Defendants' police report narratives contained false statements and misleading omissions that were material to Jones' ultimate prosecution.

All three Jones' charges have a harm component. To create probable cause for all three, Officer Defendants had to show that Jones knowingly caused or attempted to cause physical harm to an officer and that he recklessly or by force resisted or interfered with a lawful arrest and in doing so caused harm to an officer.[62] If the witness statements are true, Officer Defendants falsified the police reports to represent exactly that.[63]

Officer Defendants' police report narratives convey that Jones fought Officer Defendants and otherwise acted violently.[64] Witnesses Camel and Kennedy directly contradict this. Further, contrary to their representation that Jones "continued to fight" after Officer Weber warned Jones that he would be tased,[65] Officer Weber has since admitted that he did not warn Jones before tasing him.[66]

In addition, one Officer Defendant police report describes Officer Chalkley's hand

---

[60] Doc. 39-10 at 2.
[61] Doc. 37 at 63:19–23, 65:1–15; Doc. 38 at 17:15–21, 19:15–22; Doc. 40-1 at 29:19–24; Doc. 39-4 at 31:17–21.
[62] Doc. 33-5. *See also* Ohio Rev. Code § 2903.13(A), (C)(5) (Assault on a Peace Officer – F4); Ohio Rev. Code §2921.31 (Obstructing Official Business – F5); Ohio Rev. Code § 2921.33 (Resisting Arrest – M1).
[63] Doc. 39-5 at 7.
[64] *See* Doc. 39-5.
[65] Doc. 39-5 at 7.
[66] Doc. 37 at 45:9–13.

-14-

Case No. 1:18-cv-929
Gwin, J.

injury in a manner suggesting that *Jones* directly injured Chalkley's hand.[67] In fact, Officer Chalkley injured his hand when *he* punched Jones in the face.[68]

According to the grand jury proceeding transcript, the only evidence presented to the grand jury was testimony reading one of the Officer Defendants' police report narratives.[69] The testimony is nearly word for word.[70]

Jones also presents evidence that Officer Defendants knew their police reports would be used, or would likely be used, as the sole evidence for an indictment. Under Elyria Police Department procedure, limited police give testimony to grand jurors and give that testimony by simply reading officers' police report narratives.[71] They usually did not communicate with the officer who authored a police report before presenting the report's narrative to the grand jury.[72] Viewing the evidence in Jones' favor, Jones rebuts the probable cause presumption created by the grand jury indictment.

Sufficient evidence shows that Officer Defendants made, influenced, or participated in the decision to prosecute Jones.[73] Accordingly, Jones has sustained his burden for the fourth, and last, element as well.

Individuals have a clearly established Fourth Amendment right to be free from malicious prosecution by defendants who make, influence, or participate in the decision

---

[67] Doc. 39-5 at 7 ("Sgt. Groomes responded to the hospital and took photographs of Jones injuries as well as the injuries Officer Chalkley sustained to his hand during the fight."). *See also* Doc. 39-6 at 4–5 ("And, apparently, Officer Chalkley sustained injuries to his hand during the fight.").
[68] *See* Doc. 39-5 at 1 ("Ptlm. Chalkley reacted by striking Jones, with a closed fist, in the head. As a result, Ptlm. Chalkley injured his right hand.").
[69] Doc. 39-6 at 2–3.
[70] *Compare* Doc. 39-5 at 7, *with* Doc. 39-6.
[71] Doc. 39-4 at 5–6.
[72] Doc. 39-4 at 6.
[73] *See Sykes v. Anderson,* 625 F.3d 294, 311–12 n.9 (6th Cir. 2010) ("Whether an officer influenced or participated in the decision to prosecute hinges on the degree of the officer's involvement and the nature of the officer's actions.").

Case No. 1:18-cv-929
Gwin, J.

prosecute by knowingly or recklessly making false statements that are material to the prosecution.[74] Reasonable officers in Officer Defendants' positions would have known that they were violating Jones' rights by influencing or participating in the decision to prosecute Jones by knowingly or recklessly falsifying their police reports.

Jones presents sufficient evidence to defeat Defendants' assertion of qualified immunity. Genuine factual issues remain, and these are for the jury to decide. The Court **DENIES** Defendants' motion for summary judgment on the malicious prosecution §1983 claim against Officer Defendants.

## I. State Law Malicious Prosecution

An Ohio law malicious prosecution claim requires "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused."[75] Malice may be inferred from a lack of probable cause.[76] A plaintiff can overcome the probable cause presumption by showing that the grand jury indictment resulted from perjured testimony or otherwise significantly irregular grand jury proceedings.[77]

Because this state claim essentially requires the same showing as the federal claim, Jones presents evidence showing that there is a genuine issue for trial. The same is true as to whether Defendants are entitled to state statutory immunity, given that a reasonable juror could find that Officer Defendants falsified the police reports with malice or in bad faith to criminally prosecute Jones. The Court **DENIES** Defendants' summary judgment

---

[74] *King*, 852 F.3d at 582–83.
[75] *Criss v. Springfield Twp.*, 564 N.E.2d 440, 443 (Ohio1990).
[76] *Rogers v. Barbera*, 164 N.E.2d 162, 166 (Ohio 1960) (citation omitted).
[77] *Bickerstaff v. Lucarelli*, 830 F.3d 388, 397 (6th Cir. 2016) (citation omitted).

-16-

motion on the state law malicious prosecution claims against Officer Defendants.

## J. State Law Intentional Infliction of Emotional Distress

To prove an Ohio law intentional infliction of emotional distress claim, a plaintiff must show that "(1) defendant intended to cause emotional distress, or knew or should have known that actions taken would result in serious emotional distress; (2) defendant's conduct was extreme and outrageous; (3) defendant's action proximately caused plaintiff's psychic injury; and (4) the mental anguish plaintiff suffered was serious."[78]

Jones has not demonstrated a genuine issue as to whether Jones suffered serious emotional distress. Although expert medical testimony is not required, plaintiffs are required to present some "guarantee of genuineness," like lay witness testimony, to prevent summary judgment in favor of the defendants.[79] Jones has not done so. The Court **GRANTS** summary judgment for Officer Defendants on these claims.

## K. Section 1983 Supervisory Liability

For a supervisory liability § 1983 claim based on failure to train or supervise, a plaintiff at a minimum must show that the supervisor "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."[80] Plaintiff Jones offers insufficient evidence from which a jury could conclude that Chief Whitely took affirmative action to authorize, approve, or knowingly acquiesce in any unconstitutional conduct by Officer Defendants.[81] The Court **GRANTS** summary judgment for Chief Whitely on the supervisory liability § 1983 claim.

---

[78] *Mitnaul v. Fairmount Presbyterian Church*, 778 N.E.2d 1093, 1102 (Ohio 2002) (citation omitted).
[79] *Ford Motor Credit Co. v. Ryan*, 939 N.E.2d 891, 914 (Ohio 2010) (quotation marked omitted).
[80] *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (citation omitted).
[81] Jones appears to dedicate an entire section of the opposition to arguing that Sergeant Richard Buckway's supervisory liability. *See* Doc. 39 at 17–18. Sgt. Buckway, however, is not a party to the litigation.

### L. *Monell* Claims

To impose § 1983 liability on a municipality, a plaintiff must prove that an official custom or policy of the municipality caused his constitutional deprivation.[82]

As for the official policy and failure-to-train claims, Defendants have sustained their burden by showing the absence of a material factual issue entitling it to judgment.

Now for the ratification claim. Jones says that Elyria is liable for conducting an inadequate investigation into the April 23, 2016 incident because Chief Whitely, the final municipal policymaker, reviewed and approved Officer Defendants' conduct, despite a department policy requiring that witness information be gathered.

Sometimes, an isolated exercise of government authority that violates a person's constitutional rights is sufficient to give rise to liability, as when a final municipal policymaker ratifies a subordinate's unconstitutional conduct by reviewing and approving the subordinate's decision and the basis for it.[83] Unlike many ratification claims, however, an inadequate investigation claim requires evidence showing a pattern of violations by the final decision-making official.[84] This is because *Monell* liability requires that the action be taken *pursuant to* an official policy that caused the injury.[85]

Jones has not shown a genuine issue as to whether Chief Whitely has previously approved investigation reports without requiring witness information or follow-up to gather it. Without this evidence, the allegedly inadequate investigations cannot have caused

---

[82] *See, e.g.*, *Smith v. City of Troy, Ohio*, 874 F.3d 938, 946 (6th Cir. 2017).

[83] *Paterek v. Village of Armada, Michigan*, 801 F.3d 630, 651 (6th Cir. 2015); *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1118 (6th Cir. 1994) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

[84] *See David v. City of Bellevue, Ohio*, 706 F. App'x 847, 853 (6th Cir. 2017) (giving the four elements).

[85] *Id.*

Jones' claimed Fourth Amendment rights violations. The Court **GRANTS** summary judgment for Elyria and Chief Whitely on the *Monell* claims.

### IV. Conclusion

For the reasons stated, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for summary judgment. Further, the Court **GRANTS** Defendants' motion to strike Jones' expert report supplemental exhibit supporting his opposition, but without prejudice to the expert report's use at trial, and **DENIES** Defendants' motion to strike the Camel Declaration.

IT IS SO ORDERED.

Dated: November 8, 2018                   *s/        James S. Gwin*
                                          JAMES S. GWIN
                                          UNITED STATES DISTRICT JUDGE